May it please the Court, Sanford Weisburst on behalf of Plaintiff Appellant Ticket Purchasers. With the Court's permission, I'd like to reserve four minutes of time for rebuttal. I'd like to begin with our primary argument, which is that the terms of use did not sufficiently identify either Ticketmaster LLC or Live Nation Entertainment, Inc. The application to those two entities is slightly different. I'm going to begin with Ticketmaster LLC. Now, the terms never say Ticketmaster LLC, which is the legal entity name. They do say Ticketmaster without the LLC, but that does not identify Ticketmaster LLC because there are numerous entities with Ticketmaster in their names, and this can be found at Record page 352. There are several entities, for example, that refer to Ticketmaster, and those are in addition to Ticketmaster LLC. So a reasonable ticket purchaser reviewing these terms would not know that he or she were contracting with Ticketmaster LLC. And the relevant California code provision is 1558, and there are some cases that support our position. I'd like to begin with the Flores case, which is a California appellate decision. In Flores, the terms of use didn't use the trade name Nature's Best without LLC, and that was held not to create a contract with the legal entity known as Nature's Best Distribution LLC. And that's 7 Cal App 5th at page 4. Similarly, in the Petard case, Chief Judge Sabra, the Southern District of California, held that the trade name Salas Healthcare in the terms did not create a contract with the legal entity Orange County Homecare LLC. Now, it's not hard for a company like Ticketmaster LLC to use its full legal name. Companies do that all the time, and even Ticketmaster's U.K. affiliate, and this is at Record page 661, uses the specific legal entity name. Other companies similarly, like StubHub, use the legal entity name. So this is an easy fix for someone like Ticketmaster, and in the recent Berman decision, this court made clear that the onus is on the website owner to give adequate notice to an individual consumer. Can I just ask? So the gist of that argument is that in order to have a binding contract under California law, the contracting party has to use its full legal name. But 1558 says it should be possible to identify them, which seems like a different standard. So you need to argue that it wasn't possible for the party to identify Ticketmaster LLC as the other party. What's the basis for your argument for that? Sure. So I agree with Judge Ikuto, your statement of that standard, and I would refer the court again to page 352. So if a customer sees in these terms the word Ticketmaster without any other adornment, LLC or otherwise, in this particular circumstance, I agree that the standard is, is it possible to identify? But if you look at page 352, you can see that there are several entities. For example, Ticketmaster Advanced Tickets LLC, Ticketmaster LLC, which is the entity here, Ticketmaster New Ventures Holdings, Inc., Ticketmaster Pacific Acquisitions, Inc. In this context, if someone sees Ticketmaster, they don't know necessarily which of those entities, and I gave those as examples, they're contracting with. And this is similar, therefore, to cases like the Flores case or the Petard case where you don't know which legal entity you're speaking with. There are numerous possible entities. Is it correct that Live Nation at least once has the full LLC? Live Nation, it's, to be clear, Live Nation Entertainment, Inc., is indeed mentioned in the terms. We have a separate argument as to that. Okay. We do think that if Ticketmaster is insufficiently identified, they are in court in this case because there's no contract, no arbitration. Am I right that the full names is available one click or somewhere down the line if you click further? The full name Ticketmaster LLC is not available with a click is my understanding. Live Nation Entertainment, Inc., it does appear on the terms, and that's at page 826 of the record, for example. Our argument as to Live Nation Entertainment, Inc. is that even though they are mentioned, they are not mentioned as a party. They're mentioned as a recipient of a notice to commence an arbitration or for questions. Just getting back to Ticketmaster for a moment, does it make a difference if the complaint that was filed identified the correct Ticketmaster entity? So that suggests that at least the lawyers were capable of identifying the right contracting party. Respectfully, it does not. The same situation was present, for example, in Flores where Nature's Best Distribution LLC was among the defendants that were sued by the lawyers. The relevant position we would submit is at the time of contracting, which was before the lawyers got involved, did the individual consumer, was he able, was it possible to identify the entity? Yes, lawyers could do it later on through research and their resources, but an individual consumer could not. Am I right that Nature's Best only appears once in all of the material that was available on the Web immediately, the first page? I thought that the court there relied in significant part on the fact there's a bunch of stuff going on and Nature's Best is mentioned once. In this case, it's clear the Ticketmaster passed the LLC, but Ticketmaster and Live Nation are the terms that are consistently used many times through what's immediately available. Is that compared to Nature's Best, which appears once, among other things? I would say that there are perhaps more mentions of Ticketmaster on the Web site, not necessarily in the terms than there were in Nature's Best. But however many times, and I think, respectfully, Judge Wu made a similar point. He said, well, they use Ticketmaster a lot, but they never use Ticketmaster LLC. And therefore, on page 352, a reasonable consumer would not know which Ticketmaster entity they're dealing with. Now, if I could... One last question. Say we agreed with you on Ticketmaster but disagreed with you on Live Nation. How would that affect your case? So our adversary does make one other argument on equitable estoppel, which I would like to address, but I'm going to address that in a second. If we win on Ticketmaster LLC, then there's no contract with the folks who bought tickets on Ticketmaster.com. They are allowed to be in court. There's no arbitration clause. So that would be like a subclass of the putative class? Yes, yes, exactly. It would be purchasers who purchased from the Ticketmaster.com Web site. Now, on equitable estoppel, our adversary says, well, Ticketmaster LLC can benefit from Live Nation Entertainment, Inc., if, assuming arguendo, Live Nation Entertainment, Inc. is sufficiently identified. Equitable estoppel does not apply here. And the reason is these claims arise under antitrust law. They do not arise from the contract. They are not attempting to enforce the contract. And in cases such as Murphy v. Direct TV, authored by Judge Wardlaw, in cases called Rajagopalan, I hope I'm pronouncing that correctly, this Court has been clear, and it reads other circuits to hold the same, that equitable estoppel only applies when you're trying to enforce the very contract that contains the arbitration clause. That is not the case here. Other courts, such as the Eighth Circuit and the Wholesale Grocery case, which we cited, hold that an antitrust claim does not arise under the contract. So we don't think equitable estoppel applies. And furthermore, my last point on this, Judge Okuda, Live Nation Entertainment, Inc. is mentioned in the terms by its legal name, but the important point here is that LiveNation.com is owned by a different Live Nation entity called Live Nation Worldwide. Okay? And Live Nation Worldwide, in fact, has tried to enforce and successfully enforce these very same terms in a case called Himber from the Eastern District of New York, which is cited in our briefs. And we have made the argument under the text of the arbitration clause, and specifically the conditional carve-out provision, it talks about either or both of us in reference to the ticket-selling entity and the ticket-buying entity. In our view, the ticket-selling entity, there's only one ticket-selling entity. And so who would that be? We believe it's Live Nation Worldwide, not Live Nation Entertainment, Inc. Again, there's an easy fix that they could have used. Many other websites use a catch-all, says something like, Live Nation Worldwide and all affiliates. They did not do that here, and we shouldn't respectfully be bending over backwards to help a sophisticated company fix its terms that do not specifically identify the parties. If I could turn to our second argument, which this Court need not reach if it agrees with us on the parties argument, our second argument is there was not reasonably conspicuous notice. And I'd like to draw the Court's attention to the Berman case, which is, I believe, the most recent Ninth Circuit case on this topic. And Berman underscores a few points that I think are relevant here. One is that the Court must consider the overall design of the page. And, for example, blue brief page 9 shows a sign-up screen. Record 757 shows a place order screen. There's a lot going on on the screens besides just the terms. Aggravating the problem is that the hyperlink is in a darker blue font and the surrounding text is in a light gray font. And that, moreover, the link is not underlined. Those factors are things that a reasonable fact finder could find mean that there's not conspicuous notice here. But perhaps the most important thing, and the one that distinguishes the prior cases, albeit unpublished decision by this Court in Lee and therefore not precedential and some district court cases that have dealt with the Ticketmaster terms, none of those considered internal documents that were produced during discovery. And at page 692, for example, Ticketmaster admits that it uses a lighter opaque font, such as 65% gray font, for things of secondary importance. So we've got the explanation for why someone should even click on the terms to review the arbitration clause in a secondarily important font. And that's something that, again, a fact finder should be able to consider. Finally... I didn't quite understand that. Yes. The way I understood it, and tell me which part I'm missing, that what they do have is in blue, other things are in gray. Then you just sort of said, well, gray is too light and they shouldn't have to look at that. What did I miss? So the gray text explains the importance of the blue link. So if you gloss over the gray text, you wouldn't know what the terms of use, why they're important, etc. That's our argument. I see. So you're saying that the terms of use is allegedly highlighted, but before that you have to read, you agree to our... Exactly. That's the text. And it may sound like a hyper-technical argument, but this is the last point I'd like to make, is that the Massachusetts Supreme Judicial Court, one of our named plaintiffs, Ms. Burke, is governed by Massachusetts law. The Massachusetts Supreme Judicial Court in the Cowder's case made exactly that point, contrary to our district court below. Our district court said, well, the light gray text makes the hyperlink pop out even more. It's great. It makes it clearer. The Supreme Judicial Court... You made it all blue, then you might say, well... Exactly, but... You don't understand that it's different. The Massachusetts court, however, said the exact opposite, and that's at 159 New England, NE 3rd at 1055. So we've got a diametric... What's the name of the Massachusetts? That's Cowder's, K-A-U-D-E-R-S. It's the highest court in Massachusetts. So for those and other reasons, we should at least survive on Massachusetts law, but we believe that even under California law there are some similar statements, and Berman, again, is the case that I would primarily rely on, as well as the Hansen case, which recognizes that where reasonable minds could disagree, the matter should go to a jury. But, again, this court need not reach the conspicuous notice issue if it agrees with us on the identification of parties. If the court will permit me, I'll reserve the rest of my time for rebuttal. All right. Thank you, counsel. Thank you, Your Honors, and may it please the Court. Eight total judges in this circuit have looked at the Ticketmaster Live Nation Arbitration Agreement in terms of use prior to this panel, and they all found it enforceable, because, number one, there was constructive notice, and, number two, the users all affirmatively agreed  The same website and arbitration agreement is before you in this case. And it still gives clear notice of arbitration, and users still affirmatively agree. Nothing has changed. So Appellant's argument that counsel just finished up with about not having constructive notice, however and in whatever bells and whistles they're putting before you now, is just asking you to reconsider and reverse what those judges have done. That's Judge Chen, Judge Fisher, Judge Koh, when she was a district court and before she joined you on this panel, and Judge Chabria, in addition to Judge Wu below. A Ninth Circuit panel, in an unpublished opinion, also found that the exact same arbitration agreement is valid, and those are your colleagues, Judge Thomas, Schroeder, and Bumate. And that was just two years ago, so nothing is new about the constructive notice argument that they're making, which I will address in a second. I wanted to start substantively with their argument that Ticketmaster LLC not being in the arbitration agreement or the terms of use somehow means there's no contract at all. That's a new rule. However they say that they're applying California law before you, Your Honors, it's a new rule. It's a no-suffix, no-contract rule. If you don't have the three-letter designation of the legal entity, you somehow can't identify, or there shouldn't be a contract from the get-go. This is a contract that would be void ab initio, according to their view. Why can't your client identify who the contract is with? I mean, why shouldn't that be the law, that when there's a number of different entities, that you must identify which entity it is? Sure. Two points, Your Honor. First, I don't think that this panel deciding that California law should be different comports with what all the judges have said in terms of how they actually should look at when there's a contract or not. I don't think we're bound by any of the judges or opinions that you're talking about that you say have ruled on this previously. I don't think it's finding precedent at all or maybe not even persuasive. So I'm just wondering, why shouldn't that be the law? If you're going to hold someone to arbitration, shouldn't you identify who they have to arbitrate with? Because we think they do identify who they need to arbitrate with, Your Honor. They mentioned Ticketmaster. Sticking with Ticketmaster, not Live Nation for now. They mentioned Ticketmaster in the terms of use nine times. That is the common name of the entity that the appellants transacted with. Which entity? Ticketmaster LLC is the legal suffix and the legal name of that entity. But Ticketmaster is the common name, Your Honor. There is no other Ticketmaster that sells tickets. The opposing counsel says there is, if you look through, there is five or six Ticketmaster entities. Do you disagree with that or they're not? There's only one Ticketmaster? There is only one Ticketmaster entity, Your Honor, that sells tickets and operates the Ticketmaster.com website. That is Ticketmaster LLC. That sells tickets in the United States, which is where these appellants are. And the other entities are not, don't sell tickets? They don't sell tickets in the United States. If you look at that list. Okay, so they sell tickets. So the California standard is it should be possible to identify whoever the contracting party is. So how would a person identify which Ticketmaster entity? Is there a click? Is there a link on the website? Or how would the process go? There is one click within the purchase policy link within the terms of use, and that's in the Tobias Declaration at Excerpts of Records 715 to 829. There is a click that will show you Ticketmaster LLC. That is a secondary link. The primary document, the terms of use, just identify Ticketmaster nine times. And so how would I find this link you're telling me? So I'm on the website, I see Ticketmaster, I scroll down to the bottom, and then what would I click on? No, if you are on the website, Your Honor, it's constantly just Ticketmaster. That's how these companies. Then how would I find Ticketmaster LLC? If you click on the terms of use, which is by the action button, and you enter the terms of use, there is a purchase policy link there that will say Ticketmaster LLC. So do I click on purchase policy? Is there another click? There's another click. So I click on purchase policy, and that takes me to a page that says what? That uses the name Ticketmaster LLC as part of the policies of the company. But I wanted to just circle. I'm sorry. So I'm looking at the terms of use right now. So you're saying Ticketmaster LLC isn't on the main website. You have to go to terms of use, and then you have to click on something on terms of use. So what is it on the terms of use that you have to click on? A purchase policy link. Where is that? That should be in the very first paragraph or two, Your Honor. You're saying all these websites? Yes. So you click on exchange ticket? It should be a purchase policy or purchase link. And, Your Honor, I'm looking at page 715, and I'm just looking at the exhibits there. Can you refer me to the specific? Yes, Your Honor. I believe that is if you go to exhibits of record 807. Okay. That's exhibit 41 is the terms of use. Yes, Your Honor. And where do I go to find the purchase? If you look at the first paragraph. On page 808? Yes, terms of use. Uh-huh. First I'll have to take my glasses off and get very close to the page. Okay. I don't see. I see privacy policy. Oh, and then after privacy policy, there's something that says purchase policy. Or privacy policy and then purchase policy, Your Honor. And if I go to purchase policy, do you have what that page looks like? That page I believe is in the record, Your Honor, and I would need to track it down for you. Okay. Well, I'm tracking down the page, Your Honor, because I do not have it on top with me. I'm sorry about that. No problem. But if I will, if I could just back up in terms of whether and why not you don't need Ticketmaster LLC in the actual terms. The language and the rule under California law is whether it's simply it's possible to identify the parties. And there's been no case ever that has said you need to identify the party by reference to their legal suffix or legal acronym. None of the cases that the appellants cite say that. None of them come close. The Flores case that they cite doesn't say the name of the company in it when it's talking about the arbitration. It says company repeatedly. They use nature's best one time. And that is at the very end when they're talking about an agreement between nature's best and a teamster's union. So the Flores case says nothing about whether or not a legal suffix is required. In fact, it supports our position. Same with the case that counsel cited to you earlier in arguments, the Petard case, where it says Salas County versus Orange County. Well, the defendant's name in that case is Orange County, Your Honor. And the arbitration agreement said Salas County. Entirely different. The cases that we cite all show that all you need to do is indicate that it is possible to identify the contracting party. And I just wanted to back up again from the LLC. There is no other ticket master that sells tickets in the United States. You can look at their complaint. I know counsel said, well, that's afterwards. Lawyers look at it. But read paragraph one of their complaint. Read the parties in their complaint where they talk about the individual appellants and they talk about Ticketmaster, Live Nation. There is only one entity that sells tickets in the United States. That is Ticketmaster, LLC. That is throughout their complaint. And that says nothing about whether or not counsel can identify versus a consumer. It is just a fact that these claims that they're bringing, which are antitrust claims based on Ticketmaster, LLC, selling tickets in the United States, that that is the only company that does it. So, of course, consumers that click on these links know that Ticketmaster, who is listed nine times in the terms of use, is who they're contracting with. Because there's nobody else they could be contracting with. And we have evidence in the record that they did not dispute that says the same. We have declarations from Kim Tobias and Sean Moon both in the record that talk about Ticketmaster and Ticketmaster, LLC running the Ticketmaster.com website. That website, by the way, only sells to the U.S. website, the .com. All of the affiliates they list in that page, those affiliates beyond the venture holdings are Ticketmaster Czech Republic, Ticketmaster Australia, Ticketmaster Middle East. Those Ticketmasters sell tickets in other parts of the world. And, yes, those terms of use, when you click on them, will say Ticketmaster UK. Counsel said that. And Ticketmaster Canada and Ticketmaster Australia. Because that is a separate entity and that is not the primary Ticketmaster entity that these customers, these appellants, are purchasing from. I do have, thank you to my colleague, the link, Your Honor. It's the Tobias Declaration, Exhibit 14, and it's part of the district court docket at 85-14. If I may, happy to answer any other questions on this naming convention, but I would like to turn briefly to the constructive notice, because not only in all of these eight cases did no court or no lawyer raise this issue, that somehow you couldn't identify Ticketmaster because you didn't have these three-letter acronym, but they deliberately went through the constructive notice analysis in looking at the terms of use in the arbitration agreement and looked at all of the issues that counsel brings to you. Is there any case on point that's precedential anywhere on this question? No, Your Honor. Because this is kind of a hybrid. It's not, you know, you have assent directly. It's kind of a hybrid case. It's in between. Like, I would think that we need to have some precedent on this. Precedent on the constructive notice? Perhaps we should write an opinion on this, on the constructive notice. Well, I would say that there's nothing precedential. I would consider eight judges in this district looking at the same language, Your Honor, as somewhat persuasive. And if you actually look at the Hansen opinion, which counsel discussed, Hansen, which is Judge Chen in the Northern District of California, also looked at the opacity issue and said that that wasn't enough, that the 65% opacity wasn't a problem. Here's the issue. The terms of use are throughout the website. But is it a problem that there's evidence in the record that the ticketmaster decided to change the coloring or the font or whatever in order to make it less conspicuous? There's no evidence of that nature in the record, Your Honor, whatsoever. They spent a year in discovery looking for that evidence, and they found it. Zero evidence to actually support that point. So they cite one page to you, I believe it was the excerpt of Record 687, where there's one email being exchanged between folks about what it would look like to actually make this a click-wrap agreement rather than make it a modified click-wrap agreement, which is what it is. Click-wrap agreement being you have to actually check the box, and then it allows you to hit the next button or the action button. So all that discovery, and they couldn't find anything along the lines of what Your Honor was potentially worried about. There is nothing that shows Ticketmaster made this less conspicuous. It is conspicuous, and it's been conspicuous for the last decade. The sign-in page has a little bit of the opacity, the 65 percent opacity, which Judge Wu found actually makes the blue font pop out, and you can't do anything until you look at that, and then there's an action button, and the action button is what allows you to move forward. The purchase page actually has black font. It has black font, not opaque font, and that is right next to the action button as well. The sign-up page has the same sort of parameter set up as the sign-in page, so signing up, signing in, purchasing, constantly being notified, these users, these appellants, of what it is that they're agreeing to. Let me ask you, you referred to it as click-wrap, and then you used the term modified click-wrap. I've seen a couple of others. Just from a technical or other point of view, I'm not saying that you have to go to click-wrap because of the fact that we have these cases that say you can use something less than, but is there either a technical or other reason that makes one better than the other? No technical reason, Your Honor, that makes one better than the other. Courts have found that if you are requiring folks to actually click a button before next, that that could be seen as a more actual agreement rather than constructive notice and agreement, but the web page that we have, the terms of use, the web page arbitration agreement, which is a modified click-wrap, has been found just fine. And since the law says you can do it, then we just have to decide whether you did do it well enough here because lots of times you have one business practice and another one might be better, but you don't have to go there. That's absolutely right, Your Honor. The issue is, is it possible to identify the parties, have they been given constructive notice, and have they agreed? We submit that it is absolutely possible to identify these parties because no one's ever had that issue before, and Ticketmaster is this entity that they are transacting with. We submit that there is constructive notice repeatedly on this page through all of these different pages that they sign up and signed up for repeatedly. Some of these courts have found that. One of the plaintiffs here, Mitch Oberstein, 20 different purchases. Can I ask you a question about the web page? Mitch, do you have to have an account to buy the tickets? Yes, you have to sign up, and then you have to sign in, and then purchase. Okay. Yes, Your Honor. The last thing I will say, just to wrap up on the name point, is we didn't address this, but I wanted to mention Live Nation Entertainment, Inc. is mentioned by name, by the suffix name as well. It's mentioned seven times total, three times with Inc. You have to start the arbitration process by sending a notice to Live Nation Entertainment, Inc. in order to actually start that process. And they say that also is not sufficient because somehow it hasn't identified Live Nation, Inc. or Entertainment, Inc. as a party. There's a question as to how far then this really is going because it is changing California law to this no-suffix, no-contract rule, even beyond that. It's got to be in the right place at the right time in order for it to be a contract, and that's not the law in California. My time is up, Your Honors. All right. Thank you very much, Counsel. Thank you very much. Okay. May it please the Court. Sanford Weisburst again. We're not relying on Ticketmaster Brazil or Ticketmaster Sweden or Ticketmaster Middle East. We're relying on the entities specifically on page 352, which say nothing about other countries. One of them is Ticketmaster Advanced Tickets, LLC. It doesn't matter how many times the terms of the website say Ticketmaster. A reasonable customer does not know which Ticketmaster entity he or she is dealing with. And what happened later in the case, and however many times they submitted a declaration from their in-house counsel, doesn't help a reasonable consumer who's using a website. Excuse me. The opposing counsel said none of the other entities sell tickets in the United States. Does Ticketmaster Advanced Tickets, LLC, sell tickets in the United States? I don't know the answer to that, Your Honor, but respectfully the perspective should be of the customer who's trying to figure all this out on the website, and that person would have no way to do that. And so really the relevant point is are there multiple Ticketmaster entities? Yes. How would a reasonable customer know who he or she is dealing with without possibly doing additional research? And this Court's decision in Wilson v. Huge says we're not going to put the customer to having to go through multiple steps to figure something out. Yes, under California law, if it's reasonably possible to figure it out, you have to do that. Is the one place that it does use Ticketmaster, LLC, is that the place where it says if you want to arbitrate, send it to Ticketmaster, LLC? No, no, that's Live Nation Entertainment, Inc., and I do want to address counsel's reference to the purchase policy. Not argued at all in the briefs, okay, but in any event, it's wrong. And the relevant page in the record is page 810. This is the Ticketmaster.com website. Under the making purchases paragraph on that page, there's a reference to and a link to the purchase policy. And the purchase policy itself is not in the appellate record. It is in the district court record. And it does mention Ticketmaster, LLC, but again, Wilson v. Huge says we're not going to require the customer to click multiple links, but even more important than that, this language on 810 of the excerpts of record says please review our purchase policy, which also governs. The current version of Ticketmaster.com is different. It's not in the record, of course, but this court could go to Ticketmaster.com and view it. It explicitly incorporates by reference the purchase policy. This version that governed these purchases did not. And I'd refer the court to an important case, which we also cited, the Buarich case, Buarich v. Comerica, California appellate decision, follows Flores. It says that you need an explicit and clear incorporation by reference in order to bring in another document into the picture. This version at 810 does not have that clear and explicit incorporation. Their current website, I will concede, does, but that's not the relevant perspective for these customers. Very briefly on conspicuous notice, I'd refer the court to 692, 698, and 704 of the record where they admitted that their goals were cart conversion and less friction, not clear notice. I see that my time has expired. Thank you, Your Honor. All right. Thank you very much, counsel. Oberstein v. Live Nation and Ticketmaster is submitted.
judges: Boggs, WARDLAW, IKUTA